*PRELIMINARY PRINT*

VOLUME 605 U. S. PART 2

PAGES 609–626

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 18, 2025

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

Syllabus

# OKLAHOMA ET AL. *v.* ENVIRONMENTAL PROTECTION AGENCY ET AL.

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 23–1067. Argued March 25, 2025—Decided June 18, 2025*

The Clean Air Act (CAA) channels challenges to Environmental Protection Agency (EPA) actions to the U. S. Court of Appeals for the D. C. Circuit if the actions are "nationally applicable," and to a regional Circuit if they are "locally or regionally applicable." 42 U. S. C. § 7607(b)(1). The CAA contains an exception for certain "locally or regionally applicable" actions "based on a determination of nationwide scope or effect," which also must be brought in the D. C. Circuit. *Ibid.*

In 2015, EPA revised the national ambient air quality standards (NAAQS) for ozone to be more stringent. Each State submitted a state implementation plan (SIP) detailing how it would comply with the CAA's "Good Neighbor" provision, which requires SIPs to "contain adequate provisions" "prohibiting" in-state emissions activity that would interfere with other States' NAAQS compliance. § 7410(a)(2)(D)(i)(I). EPA ultimately disapproved 21 States' SIPs for failure to comply with the Good Neighbor provision. These States had asserted they did not need to propose new emissions-reduction measures, but EPA disagreed after considering the "contents of each individual state's submission" "on its own merits" and making individual determinations for each SIP. 88 Fed. Reg. 9354.

EPA aggregated its disapprovals into one omnibus Federal Register rule describing EPA's "4-step framework" for evaluating SIP submissions. EPA asserted in the rule that its disapprovals would be reviewable only in the D. C. Circuit as either nationally applicable actions or, alternatively, as locally or regionally applicable actions falling within the "nationwide scope or effect" exception based on EPA's use of "the same, nationally consistent 4-step . . . framework" and its evaluation for "national consistency." *Id.*, at 9380–9381.

States and industry petitioners challenged EPA's SIP disapprovals in regional Circuits. Of five Circuits to resolve EPA's motions to dismiss or transfer, four found regional Circuit review proper. Only the Tenth Circuit disagreed, granting EPA's motion to transfer suits by Oklahoma

---

*Together with No. 23–1068, *PacifiCorp et al.* v. *Environmental Protection Agency et al.*, also on certiorari to the same court.

and Utah.   The Tenth Circuit concluded that EPA's omnibus rule consti-
tuted a single, nationally applicable action because it covered "21 states
across the country" and reflected EPA's application of "a uniform statu-
tory interpretation and common analytical methods."   93 F. 4th 1262,
1266.

*Held*: EPA's disapprovals of the Oklahoma and Utah SIPs are locally or re-
   gionally applicable actions reviewable in a regional Circuit.   Pp. 618–625.

   (a) Applying the framework from *EPA* v. *Calumet Shreveport Refin-
ing, L.L.C.*, 605 U. S. 627, venue determination under § 7607(b)(1) re-
quires a two-step inquiry.   First, courts identify the relevant EPA "ac-
tion" and ask whether it is "nationally applicable" or only "locally or
regionally applicable."   If nationally applicable, challenges belong in
the D. C. Circuit.   If locally or regionally applicable, courts proceed to
the second step to determine whether the "nationwide scope or effect"
exception applies to override the default rule of regional Circuit review.

   An "action" under § 7607(b)(1) is a "particular exercis[e] of EPA au-
thority undertaken pursuant to [a] particular CAA provisio[n]."   *Id.*, at
637.   Courts determine the relevant "action" by reference to the CAA
provision under which EPA acted, not how EPA presented its decision.
Each EPA SIP approval constitutes its own "action."   Section
7607(b)(1) enumerates an individual SIP approval as an example of a
locally or regionally applicable action, referring expressly to EPA's "ac-
tion in approving . . . any implementation plan under section 7410."   It
follows that each EPA SIP disapproval is also its own action, since EPA
undertakes SIP disapprovals pursuant to the same CAA authority un-
derlying SIP approvals.   Section 7410 directs each State to adopt and
submit a plan for NAAQS implementation and directs EPA to either
approve or disapprove it.   Thus, EPA's approvals and disapprovals are
opposite sides of the same coin.

   The two SIP disapprovals here are undisputedly locally or regionally
applicable actions.   A SIP is a state-specific plan, so an EPA disap-
proval on its face applies only to the State that proposed the SIP.   An
EPA decision on an individual SIP "is the prototypical 'locally or region-
ally applicable' action."   *American Road & Transp. Builders Assn.* v.
*EPA*, 705 F. 3d 453, 455.   Pp. 618–620.

   (b) EPA's and the Tenth Circuit's contrary arguments fail.   Section
7607(b)(1) "makes the CAA's framing of the relevant 'action' controlling,
regardless of how EPA chooses to package its decisions in the Federal
Register."   *Calumet*, 605 U. S., at 638.   Although EPA was free to ag-
gregate its SIP disapprovals into one rule, that aggregation has no sig-
nificance for venue purposes.   The Tenth Circuit's view that EPA's "ac-
tion" is whatever it has "chosen to issue," 93 F. 4th, at 1267, fails to

Page Proof Pending Publication

grapple with what §7607(b)(1) means by "action," which is defined by reference to the underlying CAA provision, not EPA's stylization, *Calumet*, 605 U. S., at 637.

The Tenth Circuit also erred in deeming EPA's actions nationally applicable based on EPA's use of "uniform statutory interpretation and common analytical methods." 93 F. 4th, at 1266. The "applicability" of an action turns on its formal geographical scope. An action "applies" nationally only if, on its face, it has binding effect throughout the country. *Calumet*, 605 U. S., at 638–639. EPA's interpretive and analytical methodology goes to its underlying *reasoning*, which matters only at the second §7607(b)(1) step. Pp. 621–622.

(c) Because EPA's SIP disapprovals are locally or regionally applicable, the Court must determine whether the "nationwide scope or effect" exception applies. This exception requires that (1) the action "is based on a determination of nationwide scope or effect," and (2) EPA "finds and publishes that such action is based on such a determination." §7607(b)(1). The second requirement is satisfied because EPA included an express finding in its Federal Register notice. The Court holds that EPA's SIP disapprovals were not based on any determination of nationwide scope or effect.

This requirement is met only if "a justification of nationwide breadth is the primary explanation for and driver of EPA's action." *Calumet*, 605 U. S., at 645. Such a justification "does not rise to this level if EPA also relied in significant part on other, 'intensely factual' considerations, or if the key driver of EPA's action is otherwise debatable." *Ibid.* EPA's disapprovals fall into the latter category.

EPA's omnibus rule makes clear that its SIP disapprovals were based on "a number of intensely factual determinations" particular to each State. *Texas* v. *EPA*, 829 F. 3d 405, 421. EPA evaluated the contents of each SIP "on their own merits," considering state-specific facts and information available to each State. 88 Fed. Reg. 9354. From this state-specific analysis, EPA produced for each State a unique list of "bases for disapproval." *Ibid.* For Oklahoma, EPA rejected its attempt to disclaim responsibility for certain emissions in Texas and faulted it for "insufficient evaluation of additional emissions control opportunities." *Id.*, at 9359. For Utah, EPA found inadequate justification for Utah's attempt to discount certain emissions in Colorado, as well as "technical and legal flaws in the State's arguments" regarding various emissions considerations. *Id.*, at 9360.

This state-specific analysis contrasts sharply with EPA's justifications in *Calumet*, where EPA made determinations that applied uniformly to all small refineries and used them to reach a presumptive conclusion, considering refinery-specific facts only to confirm that there is no reason

to depart from the presumptive disposition. Here, no nationwide factor settles EPA's ultimate decisions. Instead, EPA disapproved Oklahoma's and Utah's SIPs after conducting predominantly fact-intensive, state-specific analysis.

The four determinations EPA proffers—use of updated 2016-based modeling, application of a 1% contribution threshold, determination that other States' contributions could not excuse analyzing whether their own emissions significantly contribute downwind, and its position that States cannot rely on emission-reduction measures not incorporated into state plans—qualify as determinations of nationwide scope or effect. But these conclusions are at most heuristics that aided EPA's analysis rather than primary drivers of the disapprovals. None makes clear why EPA concluded that Oklahoma and Utah had produced inadequate proposals for Good Neighbor compliance. For example, EPA's 1% contribution threshold was used only for "screening" purposes to determine when further evaluation was needed, but "there was still a lot of work to be done" before EPA could issue disapprovals. Tr. of Oral Arg. 38. Pp. 622–625.

93 F. 4th 1262, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which SOTOMAYOR, KAGAN, KAVANAUGH, BARRETT, and JACKSON, JJ., joined. GORSUCH, J., filed an opinion concurring in the judgment, in which ROBERTS, C. J., joined, *post*, p. 626. ALITO, J., took no part in the consideration or decision of the cases.

*Mithun Mansinghani* argued the cause for petitioners in No. 23–1067. With him on the briefs were *Gentner Drummond*, Attorney General of Oklahoma, *Garry M. Gaskins II*, Solicitor General, *Jennifer L. Lewis*, Deputy Attorney General, *Sean D. Reyes*, former Attorney General of Utah, *Derek Brown*, Attorney General, *Stanford E. Purser*, Solicitor General, *William L. Wehrum*, *Emily C. Schilling*, *Kristina R. Van Bockern*, *Michael B. Schon*, and *Drew F. Waldbeser.*

*Misha Tseytlin* argued the cause for petitioners in No. 23–1068. With him on the briefs were *Jeff P. Johnson*, *Kevin M. LeRoy*, *Megan Berge*, *Aaron M. Streett*, *J. Mark Little*, *David C. Reymann*, *Marie Bradshaw Durrant*, *Christian C. Stephens*, *Carroll Wade McGuffey III*, *Artemis D. Vamianakis*, *Alan I. Robbins*, and *Debra D. Roby.*

Counsel

*Deputy Solicitor General Stewart* argued the cause for respondents in both cases.   With him on the brief were *Solicitor General Prelogar*, *Acting Assistant Attorney General Konschnik*, *Aimee W. Brown*, *Alexandra L. St. Romain*, *Susannah Weaver*, *Matthew Marks*, *Rosemary H. Kaban*, and *Emily Seidman*.†

---

†A brief of *amici curiae* urging reversal in both cases was filed for the State of Arkansas et al. by *Tim Griffin*, Attorney General of Arkansas, *Nicholas J. Bronni*, Solicitor General, *Dylan L. Jacobs*, Deputy Solicitor General, and *Asher L. Steinberg*, Senior Assistant Solicitor General, and by the Attorneys General for their respective States as follows: *Steve Marshall* of Alabama, *Treg Taylor* of Alaska, *Ashley Moody* of Florida, *Christopher Carr* of Georgia, *Raúl Labrador* of Idaho, *Theodore E. Rokita* of Indiana, *Brenna Bird* of Iowa, *Kris W. Kobach* of Kansas, *Liz Murrill* of Louisiana, *Lynn Fitch* of Mississippi, *Andrew Bailey* of Missouri, *Austin Knudsen* of Montana, *Michael T. Hilgers* of Nebraska, *Drew H. Wrigley* of North Dakota, *Dave Yost* of Ohio, *Alan Wilson* of South Carolina, *Marty Jackley* of South Dakota, *Jonathan Skrmetti* of Tennessee, *Ken Paxton* of Texas, *Jason S. Miyares* of Virginia, *Patrick Morrisey* of West Virginia, and *Bridget Hill* of Wyoming.   *Jennifer L. Mascott* and *R. Trent McCotter* filed a brief for Sen. Mike Lee et al. as *amici curiae* urging reversal in No. 23–1067.

Briefs of *amici curiae* urging affirmance in both cases were filed for the State of New York et al. by *Letitia James*, Attorney General of New York, *Barbara D. Underwood*, Solicitor General, *Judith N. Vale*, Deputy Solicitor General, *Elizabeth A. Brody*, Assistant Solicitor General, and *Morgan A. Costello* and *Claiborne E. Walthall*, Assistant Attorneys General, by *Christian Menefee*, and by the Attorneys General for their respective jurisdictions as follows: *Kris Mayes* of Arizona, *William Tong* of Connecticut, *Kathleen Jennings* of Delaware, *Brian L. Schwalb* of the District of Columbia, *Anne E. Lopez* of Hawaii, *Kwame Raoul* of Illinois, *Aaron M. Frey* of Maine, *Anthony G. Brown* of Maryland, *Andrea Joy Campbell* of Massachusetts, *Dana Nessel* of Michigan, *Matthew J. Platkin* of New Jersey, *Raúl Torrez* of New Mexico, *Dan Rayfield* of Oregon, *Peter F. Neronha* of Rhode Island, *Charity R. Clark* of Vermont, *Nicholas W. Brown* of Washington, and *Joshua L. Kaul* of Wisconsin; and for Jonathan Cannon et al. by *Matthew J. Sanders* and *Deborah A. Sivas*.

*Jeremy C. Marwell*, *Jennifer B. Dickey*, *Andrew R. Varcoe*, and *Eric Groten* filed a brief for the Chamber of Commerce of the United States of America as *amicus curiae* in both cases.

Justice Thomas delivered the opinion of the Court.

Petitioners seek judicial review of the Environmental Protection Agency's (EPA's) disapprovals of two state emissions-control plans. These cases require us to decide the proper venue for their challenges. The Clean Air Act (CAA) channels these challenges to the U. S. Court of Appeals for the D. C. Circuit if EPA's disapprovals are "nationally applicable," and to a regional Circuit if they are "locally or regionally applicable." 42 U. S. C. § 7607(b)(1). But, the CAA contains an exception for certain "locally or regionally applicable" actions "based on a determination of nationwide scope or effect," which also must be brought in the D. C. Circuit. *Ibid.* Applying the interpretation of § 7607(b)(1) that we outlined today in *EPA* v. *Calumet Shreveport Refining, L.L.C.*, 605 U. S. 627 (2025), we hold that EPA's disapprovals are locally or regionally applicable actions reviewable in a regional Circuit.

I

A

The CAA's venue provision, § 7607(b)(1), dictates where petitioners should challenge EPA actions taken under that statute. This provision enumerates certain "nationally applicable" actions that must be brought in the D. C. Circuit, and certain "locally or regionally applicable" actions that must be brought in a regional Circuit. § 7607(b)(1). It then provides catchall clauses requiring the same treatment of all other "nationally applicable" and "locally or regionally applicable" actions. *Ibid.* But, § 7607(b)(1) includes one exception to its default rule for locally or regionally applicable actions: A challenge to such an action belongs in the D. C. Circuit if (1) it "is based on a determination of nationwide scope or effect," and (2) "in taking such action [EPA] finds and publishes that such action is based on such a determination." *Ibid.*

In *Calumet*, we explained that determining venue under § 7607(b)(1) requires a two-step inquiry. 605 U. S., at 636. At the first step, we identify the relevant EPA "action" and ask whether it is "nationally applicable" or only "locally or regionally applicable." § 7607(b)(1). If the action is "nationally applicable," then any challenge to it belongs in the D. C. Circuit. *Ibid.* But, if the action is "locally or regionally applicable," then we proceed to the second step, where we ask whether the "nationwide scope or effect" exception applies to override § 7607(b)(1)'s default rule that "locally or regionally applicable" actions are reviewable only in the regional Circuits. *Ibid.* If the exception applies, then any challenge to the action must be brought in the D. C. Circuit. *Ibid.*

B

These cases arise from EPA's review of "State implementation plans" (SIPs)—*i. e.*, state proposals for how to comply with an EPA "national primary or secondary ambient air quality standard" (NAAQS). See § 7410. The CAA makes the SIP process one of federal-state collaboration. EPA first sets a NAAQS, which "represents 'the maximum airborne concentration of [a] pollutant that the public health can tolerate.'" *West Virginia* v. *EPA*, 597 U. S. 697, 707 (2022); see § 7409(b). But, States bear "primary responsibility" for deciding how a NAAQS should be attained. § 7401(a)(3). States must propose SIPs that "provid[e] for [the] implementation, maintenance, and enforcement" of a NAAQS within their jurisdictions. § 7410(a)(1). EPA then approves or disapproves each SIP based on whether it meets the "applicable requirements" of the CAA. § 7410(k)(3). If EPA disapproves a SIP, then EPA must issue a "[f]ederal implementation plan" for that State within two years. § 7410(c)(1). A State can avoid this outcome only if it "corrects the deficiency" and gains EPA approval for its revised SIP before EPA promulgates the federal plan. *Ibid.*

In 2015, EPA triggered the SIP process by revising the NAAQS for ozone to be more stringent. 80 Fed. Reg. 65294. Each State in turn submitted a SIP, which, as relevant here, detailed how the submitting State would comply with the CAA's "Good Neighbor" provision, § 7410(a)(2)(D)(i)(I). That provision accounts for the "externality" that "[b]ecause air currents can carry pollution across state borders, emissions in upwind States sometimes affect air quality in downwind States." *Ohio* v. *EPA*, 603 U. S. 279, 283–284 (2024). In particular, the provision requires SIPs to "contain adequate provisions . . . prohibiting" in-state "emissions activity" that would interfere with other States' NAAQS compliance. § 7410(a)(2)(D)(i)(I).

EPA ultimately disapproved 21 States' SIPs for failure to comply with the "Good Neighbor" provision. 88 Fed. Reg. 9336 (2023). These States had all asserted in their SIPs that they did not need to propose new emissions-reduction measures in light of the new NAAQS. But, after considering "the contents of each individual state's submission . . . on their own merits" and making an individual determination with respect to each SIP, EPA disagreed. *Id.*, at 9354.

After making its individual determinations, EPA aggregated its disapprovals into one omnibus Federal Register rule. *Id.*, at 9337–9338. The rule began by describing EPA's "4-step framework" for evaluating SIP submissions, although EPA noted that it had also permitted States to "presen[t] alternative approaches." *Id.*, at 9338.[1] EPA then provided for each State a "brief, high level overview"

---

[1] Under EPA's four-step framework, the agency (1) identifies monitoring sites that will likely have difficulty meeting the NAAQS; (2) identifies upwind States that "impact those air quality problems . . . sufficiently such that the states are considered 'linked' and therefore warrant further review and analysis"; (3) "identif[ies] the emissions reductions necessary (if any) . . . to eliminate each linked upwind state's significant contribution" to excess ozone at the downwind monitoring sites; and (4) "adopt[s] permanent and enforceable measures needed to achieve those emissions reductions." 88 Fed. Reg. 9338.

of its "evaluation and key bases for disapproval," while directing readers to the "relevant Federal Register notifications of proposed disapproval for each state" and certain other documents for the "full basis for the EPA's disapprovals." *Id.*, at 9354 (boldface deleted).

In its rule, EPA also asserted that its disapprovals would be reviewable only in the D. C. Circuit. According to EPA, the rule was a nationally applicable action under § 7607(b)(1). *Id.*, at 9380. Alternatively, EPA made a finding that, if the rule was only locally or regionally applicable, then it fell within the "'nationwide scope or effect'" exception. EPA identified as qualifying determinations of nationwide scope or effect its use of "the same, nationally consistent 4-step . . . framework," as well as its evaluation of States' alternative approaches "with an eye to ensuring national consistency and avoiding inconsistent or inequitable results." *Id.*, at 9380–9381.

Disregarding EPA's conclusions, States and energy-industry petitioners challenged EPA's SIP disapprovals in the regional Circuits. EPA moved to dismiss these challenges or to transfer them to the D. C. Circuit, but its efforts have been largely unsuccessful. Of the five Circuits to resolve EPA's motions, four have found that regional Circuit review is proper.[2]

Only the Tenth Circuit disagreed, granting EPA's motion to transfer suits brought by the States of Oklahoma and Utah and by industry petitioners (collectively, petitioners). 93 F. 4th 1262, 1264 (2024). In its view, EPA's omnibus rule disapproving the 21 SIPs constituted a single, nationally applicable action. *Id.*, at 1266. Rejecting petitioners' contention that each individual SIP disapproval constitutes its own "action," the Tenth Circuit concluded that the relevant "ac-

_____

[2] See *West Virginia* v. *EPA*, 90 F. 4th 323, 325 (CA4 2024); *Texas* v. *EPA*, 132 F. 4th 808, 830 (CA5 2025); *Kentucky* v. *EPA*, 123 F. 4th 447, 452 (CA6 2024); Order in *Arkansas* v. *EPA*, No. 23–1320, ECF Doc. 5269098 (CA8, Apr. 25, 2023).

tion" is simply whatever EPA has "chosen to issue." *Id.*, at 1267. Thus, because EPA had grouped its disapprovals into a single rule, that rule constituted the "action" at hand. See *id.*, at 1266–1267. And, the Tenth Circuit concluded, this action was nationally applicable given both its geographical breadth and the nature of its analysis: EPA's rule covered "21 states across the country" and reflected EPA's "appli[cation of] a uniform statutory interpretation and common analytical methods." *Id.*, at 1266. The Tenth Circuit accordingly transferred petitioners' challenges to the D. C. Circuit. *Id.*, at 1264. We granted certiorari to review that transfer decision. 604 U. S. 997 (2024).

## II

Applying our *Calumet* framework, we begin with the first step of the § 7607(b)(1) inquiry. As explained, at this step, we must identify the relevant EPA "action" and then decide whether it is nationally applicable or only locally or regionally applicable. 605 U. S., at 636–639. We conclude that the EPA "action" in these cases is not EPA's omnibus rule, but rather its individual denials of the Oklahoma and Utah SIPs. Clearly, these denials are locally or regionally applicable.

## A

As we recognized in *Calumet*, "[b]ecause § 7607(b)(1) pegs venue to the scope of the EPA action being challenged, our threshold task is to identify the 'action' at issue." *Id.*, at 636. Only when we understand the relevant "action" can we decide whether it is nationally applicable or locally or regionally applicable—that is, whether it facially applies "throughout the entire country, or only to particular localities or regions." *Id.*, at 638. Here, as in *Calumet*, our resolution of the threshold question effectively resolves the proper classification.[3]

---

[3] As in *Calumet*, we need not decide the precise line between a "nationally applicable" and a "locally or regionally applicable" action under § 7607(b)(1). That question may raise difficult questions in edge cases

An "action" under §7607(b)(1) is a "particular exercis[e] of EPA authority undertaken pursuant to [a] particular CAA provisio[n]." *Id.*, at 637. We thus determine the relevant "action" by reference to the CAA provision under which EPA has acted. This focus on the operative CAA provision means that the relevant "action" will not necessarily track how EPA has presented its decision. For example, in *Calumet*, we held that, whenever EPA denies a small refinery's petition for an exemption from the CAA's renewable fuel program, each individual exemption denial constitutes its own "action" because §7545(*o*)(9)(B) defines EPA's role— "'evaluating a petition'" and "'act[ing] on'" it—on a petition-specific basis. *Id.*, at 639 (alteration omitted). That statutory denomination controls even if EPA chooses to resolve multiple petitions in one fell swoop, as it did in *Calumet*. *Id.*, at 640.

Here too, we conclude that each EPA SIP disapproval constitutes its own "action." We therefore reject EPA's contention, adopted by the Tenth Circuit, that EPA's omnibus rule should be treated as a single "action." Instead, we have before us two distinct "actions"—EPA's respective disapprovals of the Oklahoma and Utah SIPs.

Section 7607(b)(1) simplifies our analysis of this issue. The CAA enumerates an individual SIP approval as an example of a locally or regionally applicable action, unlike in *Calumet*, where we dealt with an EPA decision that did not fall within any of §7607(b)(1)'s enumerated actions. Section 7607(b)(1) provides:

"A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title . . . , [other enumerated examples], . . . or any other final action of the Administrator under this chapter (including any denial or disap-

given the binary nature of these categories. See 605 U. S., at 639, n. 3.

proval by the Administrator under subchapter I) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit."

A SIP is an "implementation plan under section 7410," and § 7607(b)(1)—in referring expressly to EPA's "action in approving . . . any implementation plan" under that provision—makes clear that each EPA SIP approval is its own action.

It follows that each EPA SIP disapproval is also its own action. EPA undertakes SIP disapprovals pursuant to the same CAA authority underlying its SIP approvals. Namely, § 7410 directs "[e]ach State" to "adopt and submit [to EPA] a plan" for NAAQS implementation, and in turn directs EPA to either "approve such submittal" or "disapprove" it. §§ 7410(a)(1), (k). Thus, EPA's approvals and disapprovals are opposite sides of the same coin. As § 7410's SIP-specific focus makes clear, and § 7607(b)(1)'s enumeration confirms, the CAA treats both individual SIP approvals and individual SIP disapprovals as discrete actions. Thus, we have before us two EPA actions—EPA's disapprovals of the Oklahoma and Utah SIPs.

These two disapprovals are undisputedly locally or regionally applicable actions. A SIP is a state-specific plan, so an EPA disapproval on its face applies only to the State that proposed the SIP. And, the CAA recognizes this limited scope in enumerating a SIP approval as a locally or regionally applicable action. § 7607(b)(1). If anything, EPA's decision on an individual SIP "is the prototypical 'locally or regionally applicable' action," as courts have recognized and even EPA acknowledges. *American Road & Transp. Builders Assn.* v. *EPA*, 705 F. 3d 453, 455 (CADC 2013) (majority opinion of Kavanaugh, J.); see Brief for Respondents 25.[4]

---

[4] We leave for another day the meaning of the parenthetical in § 7607(b)(1), which specifies that "any other final action . . . (including any denial or disapproval by the Administrator under subchapter I) which is

## B

EPA's and the Tenth Circuit's contrary arguments do not survive scrutiny. EPA largely reprises the arguments it made in *Calumet*, and we reject those arguments for the reasons explained there. 605 U. S., at 640–642. In short, §7607(b)(1) "makes the CAA's framing of the relevant 'action' controlling, regardless of how EPA chooses to package its decisions in the Federal Register." *Id.*, at 638. Thus, although EPA was free to aggregate its SIP disapprovals into one rule, that aggregation has no significance for venue purposes.

The Tenth Circuit's endorsement of EPA's position is equally unpersuasive. On its view, we must accept EPA's framing of the relevant "action" because EPA's "action" is just whatever it has "chosen to issue." 93 F. 4th, at 1267. But, that reasoning fails to grapple with what §7607(b)(1) means by that word. In context, §7607(b)(1) defines the relevant "action" by reference to the underlying CAA provision, not EPA's stylization. *Calumet*, 605 U. S., at 637; *supra*, at 619.

Nor can the Tenth Circuit deem EPA's actions nationally applicable based on EPA's use of a "uniform statutory interpretation and common analytical methods." 93 F. 4th, at 1266. The "applicability" of an action turns on its formal geographical scope: An action "applies" nationally only if, on its face, it has binding effect throughout the country. *Calumet*, 605 U. S., at 638–639. In contrast, EPA's interpretive and analytical methodology goes to its underlying *reasoning*. That component matters only at the second §7607(b)(1) step, where one prerequisite for D. C. Circuit review is that a locally or regionally applicable action nonetheless be "based on a determination of nationwide scope or effect." We

---

locally or regionally applicable" is subject to the default of regional Circuit review. Because we hold that EPA's SIP disapprovals are locally or regionally applicable in any event, we need not consider petitioners' argument that this parenthetical makes all denials or disapprovals under subchapter I of the CAA locally or regionally applicable actions.

would make a hash of the CAA's venue framework if we looked to the basis for EPA's actions at the first step too.

## III

Because EPA's SIP disapprovals are only locally or regionally applicable, we move to the second step of the §7607(b)(1) inquiry. At this step, "we ask whether the 'nationwide scope or effect' exception applies to override the default of regional Circuit review for locally or regionally applicable actions." *Id.*, at 642. We hold that it does not: The exception does not apply here, so these cases properly belong in a regional Circuit.

Our analysis turns on the first of the "nationwide scope or effect" exception's two requirements. That exception applies only if the action at issue (1) "is based on a determination of nationwide scope or effect," and (2) "in taking such action [EPA] finds and publishes that such action is based on such a determination." §7607(b)(1). Here, the second requirement is plainly satisfied: EPA included in its Federal Register notice an express finding that its SIP disapprovals were "based on a determination of 'nationwide scope or effect.'" 88 Fed. Reg. 9380. Thus, our task is to decide whether that finding was correct.

We hold that EPA's SIP disapprovals were not based on any determination of nationwide scope or effect. As we explained in *Calumet*, this requirement is met only if "a justification of nationwide breadth is the primary explanation for and driver of EPA's action." 605 U. S., at 645. But, such a justification "does not rise to this level if EPA also relied in significant part on other, 'intensely factual' considerations, or if the key driver of EPA's action is otherwise debatable." *Ibid.* EPA's disapprovals of the Oklahoma and Utah SIPs fall into the latter category.

EPA's omnibus rule makes clear that its SIP disapprovals were based on "a number of intensely factual determinations" particular to the State at issue. *Texas* v. *EPA*, 829

F. 3d 405, 421 (CA5 2016). As EPA explained, it evaluated the contents of each SIP "on their own merits," "consider-[ing] the facts and information . . . available to the state at the time of its submission," as well as more recent information regarding that State's circumstances. 88 Fed. Reg. 9354. From this state-specific analysis, EPA produced for each State a list of "bases for disapproval," *ibid.*, with each list "giving a unique mixture of reasons," *West Virginia* v. *EPA*, 90 F. 4th 323, 330 (CA4 2024). For example, as to Oklahoma, EPA rejected its attempt to disclaim responsibility for certain emissions in Texas, while also faulting it for providing an "insufficient evaluation of additional emissions control opportunities." 88 Fed. Reg. 9359. And, as to Utah, EPA found that the State had inadequately justified its attempt to discount certain emissions in Colorado, while also "find[ing] technical and legal flaws in the State's arguments" regarding various emissions considerations. *Id.*, at 9360. Based on these and other reasons, EPA concluded that each State had failed to submit a SIP with "the necessary provisions to eliminate emissions" consistent with that State's Good Neighbor obligations. 87 Fed. Reg. 9824, 31483 (2022).

This state-specific analysis contrasts sharply with EPA's justifications in *Calumet*, where we found the "nationwide scope or effect" exception triggered. There, EPA made two determinations that applied uniformly to all small refineries across the country, which it used to reach a presumptive conclusion as to how the exemption petitions before it should be resolved. 605 U. S., at 646–647. EPA considered refinery-specific facts only to "confirm that it had no reason to depart from its presumptive disposition." *Id.*, at 647. In that circumstance, we explained, EPA's national determinations constituted "the most important parts of its reasoning" and "the primary driver of its decision." *Ibid.*

Here, in contrast, no nationwide factor all but settles EPA's ultimate decisions. Instead, EPA disapproved Okla-

homa's and Utah's SIPs after conducting predominantly fact-intensive, state-specific analysis.

The determinations that EPA proffers as the basis of its disapprovals only reinforce this conclusion. Before this Court, EPA points to four determinations: (1) its use of "updated, 2016-based modeling as the 'primary' basis for its 'assessment of air quality conditions and pollution contribution'"; (2) its application of "a 1% contribution threshold across all States to assess whether a State contributed more than a de minimis amount of ozone pollution downwind"; (3) its "determin[ation] that the relative contributions of other States or countries could not excuse a State from analyzing whether its own emissions 'significantly' contribute to downwind nonattainment"; and (4) its position that an upwind "State cannot rely on emission-reduction measures that are not actually incorporated into its state plan." Brief for Respondents 34–35. We agree with EPA that these conclusions qualify as determinations of nationwide scope or effect, in that they are conclusions that apply nationwide, either formally or as a practical matter given EPA's rejection of alternative approaches. But, these conclusions are at most heuristics that aided EPA's analysis, as opposed to the primary drivers of its disapprovals. None of these determinations, either alone or in combination, makes clear why EPA concluded that Oklahoma and Utah had produced inadequate proposals for compliance with their Good Neighbor obligations.[5]

Take, for example, EPA's use of the 1% contribution threshold. This threshold—which is triggered whenever an upwind State contributes at least 1% of the permissible

_____

[5] The determinations that EPA invokes before this Court differ from the ones that it cited in its original finding, where it focused primarily on its use of a "consistent 4-step . . . framework" to analyze the SIPs. 88 Fed. Reg. 9380–9381; *supra*, at 617. Because we find the determinations EPA currently invokes to be inadequate, we need not decide whether EPA's shift in position raises a preservation problem. See *EPA* v. *Calumet Shreveport Refining, L.L.C.*, 605 U. S. 627, 646, n. 4 (2025).

ozone level to a downwind State—refers to EPA's measure of when an upwind State becomes "'linked' to a downwind air quality problem," so as to implicate potential Good Neighbor obligations. 88 Fed. Reg. 9342; see n. 1, *supra*. EPA used this threshold only for "screening" purposes: Where the threshold was triggered, EPA would "further evaluate" the upwind State's emissions, to assess whether those emissions require ameliorative steps under the CAA. 88 Fed. Reg. 9342, 9371. But, this kind of analytical guidepost cannot be deemed the primary driver of EPA's ultimate conclusion that Oklahoma's and Utah's SIPs were deficient. As EPA does not dispute, even after it made its threshold determination, "there was still a lot of work to be done" before EPA could issue its disapprovals. Tr. of Oral Arg. 38. In that circumstance, we cannot say that the "nationwide scope or effect" exception applies.[6]

\* \* \*

The Tenth Circuit erred in holding that petitioners' challenges should be reviewed in the D. C. Circuit. EPA's disapprovals of the Oklahoma and Utah SIPs are locally or regionally applicable actions. And, these cases are not ones where the "nationwide scope or effect" exception applies. Accordingly, as with most locally or regionally applicable actions, petitioners' challenges can be heard only in a regional Circuit. The judgment of the Court of Appeals is reversed, and the cases are remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE ALITO took no part in the consideration or decision of these cases.

_____

[6] EPA's case for the exception's applicability rests on arguments that we rejected in *Calumet*. Most notably, we rejected EPA's position that its action is "based on" a qualifying determination so long as that determination supplies a but-for cause. See *id.*, at 644–645. We need not revisit here the problems with EPA's premise.

JUSTICE GORSUCH, with whom THE CHIEF JUSTICE joins, concurring in the judgment.

The Court holds that the proper venue for this litigation lies in an appropriate regional circuit, not in the D. C. Circuit. I agree. As I explain in today's companion case, however, the Court and I arrive at that conclusion by different paths. See *EPA* v. *Calumet Shreveport Refining, L.L.C.*, 605 U. S. 627, 662–663 (2025) (GORSUCH, J., dissenting). Accordingly, I am unable to join the Court's opinion, but I am pleased to concur in its judgment.

Page Proof Pending Publication

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None